In the Matter of MARTHA M. LUTHER, Petitioner, against ROSE M. CLARKE et al., Constituting the Board of Elections of Ontario County, Respondents.

Supreme Court, Special Term, Ontario County, October 10, 1945.

*Saverio M. Flemma* for petitioner.

*Anson L. Gardner* for respondents.

*Holbrook & Holbrook* and *Costello, Cooney & Fearon* for Taxpayers' Local Option Committee, *amicus curiæ.*

VAN VOORHIS, J. This proceeding differs from any that have been cited in that no war voters will be prevented from casting their ballots on the local option questions in the town of Canadice if the election is allowed to proceed as planned. In all of the other cases at least one war ballot had been sent out before the filing of the petition for the local option submission and in such instances it has uniformly been held that the Legislature intended that no action should be taken for the reason that all war voters must be given opportunity to vote upon local option in the manner provided by law for taking the soldier and sailor vote for all elective offices and upon all questions that may be submitted to the people. Such a result could easily occur in some towns or cities even under the War Ballot Act of 1945 (L. 1945, ch. 350), inasmuch as the distribution of war ballots in certain instances commences as early as September 7th (Election Law, § 306, subd. 1), whereas petitions for local option are not to be filed until the period from September 7th to September 22d inclusive (Alcoholic Beverage Control Law, § 141). In this case no war ballots could be distributed until the application of petitioner's husband was received on October 5th,

since no applications for such ballots were mailed to the Board of Elections before that date, and there were no names upon the register of war voters. The ballot which was sent in response to petitioner's husband's application contained the questions with respect to local option. This application was postmarked October 2d at Camp Shelby, Mississippi, was received by the Board of Elections, as has been stated, on October 5th; the war ballot was forwarded to him on October 8th, and will certainly be received by him in time to be in the hands of the War Ballot Commission before November 5th so as to be counted in the election (Election Law, § 307, subd. 3). He is the only war voter to apply thus far; if any other applications come in they will receive similar ballots containing all questions to be voted upon. War ballots may be sent out as late as October 16th (Election Law, § 305, subd. 4). This statute contains no provision for carrying over the names of war voters upon the war register from previous years, as in the case of the general registration of voters, and, in the nature of things, this would hardly be possible, especially not, where, as here, there is a different statutory procedure from that prescribed for the previous year. The 1945 War Ballot Act no longer specifies different procedures for war voters in the domestic and foreign services.

In objecting to the conduct of this election the broad ground has been urged that the Legislature intended to postpone all local option submissions until after the conclusion of the war. The inference is that men and women in the armed forces should not only be permitted to vote upon such questions but should also be given opportunity to work for or against the adoption of these measures among their friends and neighbors at home. There is something to be said for that policy, but the court is unable to discern that the Legislature intended to accomplish that result without other manifestation of such a purpose than the confusion in the statutes with reference to the dates of filing local option petitions which has resulted from advancing the election calendar in other respects in the war years so as to facilitate taking the soldiers' and sailors' vote. In the absence of plainer language it will hardly be concluded that the Legislature meant to do more than to protect the votes of men and women in the armed forces; where that has been done, there does not appear to have been any object to restrict the powers of towns and cities to decide for themselves whether intoxicating beverages shall be sold within their borders.

An argument has been made that in no case can local option questions be submitted to the electorate on the theory that section 311 of the Election Law requires the Board of Elections to determine on August 29th what candidates and questions are to be voted upon. It is true that the first sentence states that such a determination shall be final and conclusive with respect to offices, but contains no such statement with respect to questions and propositions. Furthermore, the last sentence of section 311, if it does not render the entire section unconstitutional, at least indicates that the procedure thereby prescribed is intended to be directory rather than mandatory. This sentence reads: " The failure of the board of elections or the commission to include the name of any nominee or any amendment, referendum, proposition or question on the war ballot shall in no wise affect the validity of the election with respect to the office for which he was nominated or the validity of the war ballot as to other candidates or offices or as to the validity of the vote on any amendment, referendum, proposition or question." It is not perceived that the fact that the Board of Elections of Ontario County did not have before it these local option questions on August 29th has the effect of depriving any members of the armed forces of the right to vote upon them. It is true that on or before July 28th, under subdivision 2 of section 305 of the Election Law, the Board of Elections might have received from the War Ballot Commission the name, residence and military address of war voters ascertained by the commission upon its own motion from the War and Navy Departments. In that case war ballots would have been required to be forwarded to these men or women on or before September 7th (Election Law, § 306, subd. 1). The commission did not succeed in ascertaining any such names from the War and Navy Departments, however, with the result that there were no names on the register of war voters of the town of Canadice until October 5th.

The court concludes that there is no constitutional inhibition [N. Y. Const., art. II, § 1] or failure of statutory power which precludes the submission of these local option questions to the voters of the town of Canadice.

The other grounds for attacking the validity of the petition for the submission of the local option questions are equally untenable. These are:

(a) That thirty-five persons signing the said petition filed on September 22, 1945, had already signed a similar petition filed September 12, 1945. The two petitions are identical except

for the signatures. Both ask that the same local option questions be submitted to the voters. The earlier was rejected by the Board of Elections as being invalid in that most of the signatures were signed in pencil. Lead pencil signatures have been ruled to be defective by the Attorney-General (1938 Atty. Gen. 211) on the basis of three Supreme Court decisions published in the New York Law Journal, one of which, *Matter of Brady*, was affirmed by the Appellate Division (246 App. Div. 561). The following excerpt from the opinion of the court below is quoted by the Attorney-General: " The Election Law makes no specific requirements that ink be employed. However, the nature and importance of a designating petition — a vehicle by which a person becomes the nominee of a political party — are such that the use of a substance more durable than the lead found in the common lead pencil is demanded. The law anticipates that the petitions be permanent in character. Lead pencil writing, easily erasible, is not intended to be used. Eighteen pencil signatures are invalid." (See, also, *Matter of Johnston* v. *Bliss,* 175 Misc. 64; *Matter of Marion,* 174 Misc. 897.) A petition for local option is required to be acknowledged or authenticated as in the case of the designating petition (Alcoholic Beverage Control Law, § 141). The earlier petition was therefore properly rejected. A signer of a later petition cannot be disqualified unless he or she has previously signed a *valid* petition. The later petition contains forty-eight names which is more than 25% of the 140 votes cast in the last gubernatorial election (Alcoholic Beverage Control Law, § 141).

(b) That a prior petition for submission of said questions had already been signed. This is disposed of by the ruling on the preceding objection. No prior valid petition had been filed.

(c) That said petition filed September 22d does not set forth the election district or the town or city where the various persons signing the alleged petition reside. This objection is unfounded since each signatory is stated to reside at a particular address in the town of Canadice. The evidence establishes that there is but one election district which comprises the entire town and is coterminous therewith. The reference to the signer as residing in the town of Canadice is sufficient to designate that election district.

(d) That the authenticating affidavits appended at the bottom are not in the form prescribed by section 135 of the Election Law. This objection is unsubstantial. The affidavits are in the form prescribed by the said statute.

(e) That said petition or petitions are not numbered properly or consecutively numbered. Sections 135 and 136 of the Election Law need be followed only in respect to the acknowledgment or authentication of local option petitions (Alcoholic Beverage Control Law, § 141; *Matter of Bentley,* 160 Misc. 706, affd. 251 App. Div. 773; *Matter of Johnston* v. *Bliss,* 175 Misc. 64). This petition consists of two sheets, bound together, each consecutively numbered.

On account of the foregoing reasons it is held that the relief demanded in this proceeding under article 78 of the Civil Practice Act should be denied.

It is unnecessary to consider whether written objections were required to be filed within three days from the filing of the local option petition under section 142 of the Election Law, or whether section 330 of the Election Law provides exclusive procedure with respect to any of the objections raised.

The petition is denied.